In the Matter of LINCOLN G. SCHMIDT, as President Judge of the District Court of Suffolk County, Respondent.

Second Department, December 31, 1968.

*Solomon A. Klein,* counsel appointed to prosecute the charges.
*Joseph C. Hogan* for respondent.

*Per Curiam.* By order of this court made on May 17, 1967 Mr. Justice Thomas P. Farley was designated to conduct an investigation of the District Court of Suffolk County. Upon the submission of his report, this court found that sufficient cause existed for the institution of a proceeding (pursuant to N. Y. Const., art. VI, § 22, subd. i; UDCA, § 103, subd. [e] ; Code Crim. Pro., § 132) to remove respondent, President Judge of the District Court of Suffolk County, from office for cause.

There were 4 charges in the original statement of charges served upon respondent; thereafter, 10 additional charges were preferred against him. There is no basic dispute as to the material facts. In his answer to the original 4 charges, respondent substantially conceded all of the factual allegations of these charges but pleaded for '' Leave to show extenuating and miti-

gating circumstances '' with respect to each of them. As to the additional 10 charges respondent, in his answer and in his testimony at the hearing before this court, has similarly conceded the factual occurrences, but has denied any impropriety in connection therewith.

### CHARGES

It is alleged in the first charge of the statement of charges that in the prosecution of a truck driver for a violation of section 385 of the Vehicle and Traffic Law, the driver having discharged his attorney and the owner of the truck having sent the driver home from court, respondent directed that the owner be taken into custody until an appropriate information charging the owner with a violation of said section could be drawn against him. It was charged that the respondent's actions with respect to the owner, in directing that he be placed in custody, as a result of which the owner was handcuffed in the courtroom, constituted '' improper, high-handed and oppressive conduct ''. It was further charged that the imposition by respondent of fines in the amount of $100 on each of five violations was contrary to and in violation of subdivision 16 of section 385 of the Vehicle and Traffic Law.

As alleged in the statement of charges and as developed at the hearing, it appears that in 1966 Paul Jackson, a truck driver employed by William A. Thompson, the owner of the truck, was given five summonses for driving an overloaded truck in violation of section 385 of the Vehicle and Traffic Law. In November, 1966 the driver was found guilty before the respondent with respect to two of the five violations and was fined the minimum amounts mandated by the statute, to wit: $100 for the first offense and $250 for the second offense.

On December 9, 1966, with a third case marked peremptorily for that date, the driver, his attorney and the owner of the truck appeared before the respondent on the third violation. The attorney asked the respondent to disqualify himself on the ground that he had previously heard two cases involving the same defendant, the same truck and the same conditions and that he might thereby be prejudiced. The motion was denied. Subsequently that day, the attorney moved to withdraw as counsel because of a dispute as to his fee. Respondent told Jackson that he would give him a short time to obtain an attorney and proceed to trial at 1:30 P.M., since the file indicated that the case had been continuously adjourned and had been marked peremptorily against him. When the court reconvened at 1:30 P.M., Thompson advised respondent that he had been unable to find

an attorney and that he had sent Jackson home because he had complained of being ill. Thereupon, respondent directed that Thompson be placed in custody for the purpose of having an information drawn against him as the owner of the vehicle. Thompson was led from the courtroom with one wrist handcuffed.

Respondent testified that when he ordered the owner of the truck to be taken into custody for the purpose of having an information drawn against him, he believed that a prosecution for violation of the statute would properly lie against him as owner. However, during the recess, he was advised by the Assistant District Attorney that the charge could not be successfully prosecuted against the owner because of the difficulty of proving that he did "knowingly permit" the overweight violation. Thereupon, Thompson was released from custody, and in February, 1967 he appeared in respondent's chambers and delivered a check for $500 in full payment of all five violations. Respondent reduced the original $250 fine for the second overload violation and imposed $100 fines for each of the three remaining overload violations. Respondent testified that, at that time, it was not uncommon for a Judge of said court to impose fines of less than $250 for second or subsequent offenses although the statute provided for a fine of not less than $100 for a first offense and not less than $250 for a second or subsequent offense. He explained that the administrative problems of processing the work through the court had, unfortunately, led him "to cut corners in some cases to get the work done and this was one of them".

The second charge, as amended, relates to a summons for speeding which one Richard Felice received on January 6, 1966, returnable on February 16, 1966 in Patchogue. Felice did not appear on February 16 and, although respondent was not assigned to Traffic Court in Patchogue on that day, nevertheless, he dismissed the case for lack of prosecution and indorsed the dismissal on the back-up sheet. While admitting these facts, respondent denied that it was "improper, irregular and contrary to the orderly administration of justice".

Respondent testified that on the day in question he left the court in Commack, where he had been presiding, and, in accordance with his usual practice, brought with him certain court records to be filed in Patchogue. At the court house in Patchogue, where he arrived after 4:30 P.M., he was given the file in the Felice case and a Clerk requested that he initial the dismissal so that the books could be closed for that day. Seeing a notation on the summons and back-up sheet indicating that the defendant had been advised of his right to counsel and of the pro-

visions of section 335-a of the Code of Criminal Procedure and that the case had been adjourned to February 16, 1966, and being advised by a Clerk that the case had been dismissed earlier that day by the Judge who had presided in Traffic Court, but who had failed to appropriately mark the papers, respondent made the notation as above indicated dismissing the case.

The third charge, as amended, alleges that in 1965 one Joseph Gauch received a summons for passing a red light, which was returnable in Patchogue on December 22, 1965. The defendant did not appear on that day; however, he did appear in court late in the afternoon of the following day, December 23. The Judge assigned to Traffic Court on that day had already left when Gauch arrived and Gauch was referred to respondent, who had just entered the building. Respondent asked Gauch how he pleaded. Gauch pleaded guilty and handed his driver's license to respondent. Respondent looked at the license and dismissed the charge. Respondent has admitted these facts but has denied that such disposition was " contrary to the proper and orderly administration of justice ".

At the hearing before this court Gauch testified that when he arrived at the court building on December 23, 1965 he was referred by a Police Sergeant to respondent; that he explained to respondent that he had passed a red light in order to avoid an accident and that if he had stopped, the automobile coming up behind him would have hit him; and that upon hearing this explanation, respondent signed the summons and said " Here, Merry Christmas ". Respondent conceded, at the hearing, that he was " carelessly wrong " in dismissing the charge in the absence of the police officer who issued the summons.

The substance of the fourth charge is that respondent became involved in a bitter matrimonial dispute between one of his wife's sisters and her husband (William King). On September 27, 1965, respondent signed a complaint against his brother-in-law, charging him with disorderly conduct. That charge was dismissed in July, 1966 for lack of prosecution. On September 6, 1966, respondent signed an arrest warrant upon the complaint of another one of his wife's sisters, whose husband had been taken to the hospital earlier that day suffering from a heart attack allegedly caused by the action of King, charging King with trespass. Respondent admitted this charge.

At the hearing the desk officer who had been at the police station testified that he had first attempted to call two Justices of the Peace to sign the arrest warrant, but when he was unable to contact either one of them he called respondent at the insistence of the complainant. There was also testimony to the effect

that there was a real possibility of a continuing breach of the peace and that the legend " Bench Warrant   *   *   *   No Bail Application   *   *   *   Hold for appearance before Justice ", which appeared on the warrant, was placed there by the desk officer of his own volition after respondent had signed the warrant.

Charges 5 to 8, inclusive, and 10 to 14, inclusive, of the additional charges are that respondent acted improperly in refusing to grant adjournments to the prosecution before dismissing certain youthful offender cases specified therein for lack of prosecution.  Charge 9 alleged that in a certain prosecution the defendant was charged, in separate informations, with the crimes of malicious mischief.  Youthful offender treatment was granted and respondent fixed January 26, 1967 as the date for trial. On that date, the Assistant District Attorney requested an adjournment on the ground that two eyewitnesses, friends of the defendant, were not present.  Respondent refused to grant an adjournment and forced the case to trial, which resulted in the granting of defense motions to dismiss for failure of proof. With respect to the alleged eyewitnesses, respondent stated: " Let the record show there was a failure of proof on the *   *   *   incident because the supporting witnesses did not appear to testify ".

It is not necessary to detail respondent's testimony with respect to these additional charges.  However, we note that as to each of them he testified as to the reasons which prompted the action which he took in either dismissing the cases for lack of prosecution or, in the case involved in the ninth charge, in forcing it on for trial.

### FINDINGS

As to the first charge, we find that in the *Jackson* case, the pattern of conduct in seeking to disqualify respondent, in relieving the attorney for Jackson and in sending Jackson home without the permission of the court, in a case which had been marked peremptorily against the defendant, indicates that Thompson acted improperly and in a manner intended to frustrate the orderly process of the court.  However, we further find that respondent unnecessarily overreacted to the situation when, in a case involving a violation of the Vehicle and Traffic Law, he ordered Thompson to be placed in custody, as a result of which the latter was led from the courtroom with one wrist handcuffed. We are also of the opinion that respondent erred in failing to impose the minimum fines required by the statute for the second and subsequent offenses.

As to the second charge, we find that when respondent marked the case against Felice for speeding " dismissed ", he was misled into doing so by the erroneous information which was contained on the back-up sheet and the information which was given to him by a Clerk of the court. However, while it appears that respondent's action in marking the case " dismissed " was the result of a mistake, we must note that it would not have happened if respondent had adhered to the proper procedure, in all cases, of having the Judge who dismisses or otherwise disposes of a case mark the actual disposition on the necessary papers.

As to the third charge, respondent admitted that his action in dismissing the charge was " carelessly wrong " and we agree. While it appears that if the matter had been properly presented it may have warranted a dismissal in view of the driver's explanation as to why he passed the red light, nevertheless, the question involving the disposition of the traffic summons was not properly before respondent and, in any event, the charge should not have been dismissed without an opportunity being afforded to the police officer to present proof of the violation.

As to the fourth charge, we find that there was a violation of canons 4 and 13 of the Canons of Judicial Ethics, and of section 14 of the Judiciary Law, which proscribes a Judge from participating in any matter in which he is related by consanguinity or affinity to any party to the controversy within the sixth degree. However, in view of the fact that the police had just unsuccessfully attempted to get another Judge to issue the arrest warrant and that there was a distinct possibility of a continuing breach of the peace, which had already apparently resulted in the hospitalization of one person, we are of the opinion that there were mitigating circumstances which present an understandable excuse for respondent's misconduct.

As to the fifth to fourteenth charges, inclusive, we believe that respondent may have acted with undue haste in dismissing some of the youthful offender cases for lack of prosecution and, in one instance, in forcing the case to trial although the prosecution was not ready to proceed. However, we find that he acted within the scope of his judicial discretion. We find no proof of improper or ulterior motives on the part of respondent with respect to these charges.

We have indicated our disapprovel of certain of respondent's actions and respondent has conceded error in several instances. We find, however, that the nature of respondent's misconduct was not of such gravity as to justify the extreme penalty of removal from office. In those instances in which he acted improperly, he was not motivated by venality, pecuniary interest or

advantage, or other improper objectives. The irregularities which have been found herein are not of such quality as, in our opinion, would warrant the imposition of the judicial sanction of " removal for cause ". Accordingly, we direct that he resume his duties forthwith.

There is a further matter, however, which merits our consideration. In our determination of the specific charges brought against respondent, certain practices have come to our attention as to which we deem it necessary and appropriate to formally state our views. We believe that, except under extraordinary circumstances, in cases involving traffic violations and other minor infractions, defendants should not be handcuffed and placed in detention cells either during a recess of the trial or while waiting for complaints to be drawn. Furthermore, we disapprove of the practice of imposing less than the minimum fines prescribed by the statute for violations of section 385 of the Vehicle and Traffic Law. We also disapprove of the practice of having a Judge other than the one who has disposed of a case make the notation on the necessary papers. It is our view that when a Judge takes final action disposing of a case, the required notation should be made by him personally and not by another Judge. Finally, we disapprove of the practice of having a Judge other than the one assigned to the Traffic Part dispose of traffic offenses. The disposition of traffic offenses should, at all times, be determined by the Judge assigned to the Traffic Part and no Judge should dispose of any matters which do not come within the scope of his assigned responsibilities.

This proceeding should be closed.

CHRIST, Acting P. J., BRENNAN, RABIN, BENJAMIN and MARTUSCELLO, JJ., concur.

In this proceeding to remove respondent, President Judge of the District Court of Suffolk County, from office for cause (N. Y. Const., art. VI, § 22, subd. i; UDCA, § 103, subd. [e]; Code Crim. Pro., § 132), the proceeding is closed, and respondent is directed to resume his duties forthwith.